IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

KATHLEEN EDITH SOMMERS,
derivatively on behalf of FLIR Systems, Inc.,

                    Plaintiff,

      v.

EARL R. LEWIS et al.,

                Defendants.

No. CV 07-1142-MO

AMENDED OPINION

**MOSMAN, J.,**

      Kathleen Sommers brought suit derivatively on behalf of FLIR Systems, Inc., ("FLIR")

against the company's current board of directors and several other current and former directors,

officers, and stock option recipients. She alleges they illegally backdated stock options, creating

unlawful profits for the options recipients and forcing the company to expend resources in

investigating and restating its financials after the backdating was discovered. Ms. Sommers

contends that the investigation and restatement of financial information with the Securities and

Exchange Commission ("SEC") caused FLIR to incur millions of dollars in damages, which she

seeks to recover from the defendants. She brought fourteen claims against the defendants,

including claims under federal and Oregon securities laws and state common law claims for

unjust enrichment, breach of fiduciary duty, and waste.

PAGE 1 - AMENDED OPINION

The defendants grouped themselves for the purposes of the motions to dismiss as follows: (1) FLIR's current board of directors, (2) individual defendants Earl R. Lewis, Andrew C. Teich, William A. Sundermeier, Stephen M. Bailey, James A. Fitzhenry, John C. Hart, Steven E. Wynne, Angus L. Macdonald, Michael T. Smith, John D. Carter, William W. Crouch, Daniel L. Manitakos, Detlev H. Suderow, Ronald R. Turner, J. Richard Kerr, Patrick L. Edsell, and W. Allen Reed (collectively the "Lewis Defendants"), (3) J. Kenneth Stringer, III, (4) George Porter, (5) J. Mark Samper, (6) Steven R. Palmquist, (7) Robert P. Daltry, (8) William N. Martin, and (9) nominal defendant FLIR.  Each group or individual defendant has filed a motion to dismiss.

On February 12, 2009, oral argument was heard on pending motions.  This included: Motion to Dismiss Amended Complaint by FLIR Systems, Inc.'s Current Board of Directors (#64), Motion to Dismiss Amended Complaint by the Lewis Defendants (#68), defendant Stringer's Motion to Dismiss Amended Complaint (#62),  defendant Porter's Motion to Dismiss Amended Complaint (#70), Motion to Dismiss Defendant J. Mark Samper (#72), defendant Palmquist's Motion to Dismiss Amended Complaint (#74), defendant Daltry's Motion to Dismiss Amended Complaint (#77), defendant Martin's Motion to Dismiss Amended Complaint (#78), and nominal defendant FLIR Systems, Inc.'s Motion to Dismiss Amended Complaint (#73).

At the hearing, the court granted the Motion to Dismiss Amended Complaint by FLIR Systems, Inc.'s Current Board of Directors (#64) with prejudice.  This rendered all other motions to dismiss moot.  Nevertheless, given the uncertain status of the law under which the case was dismissed and the time and attention devoted to the remaining motions to dismiss, the court also ruled on them at oral argument.

PAGE 2 - AMENDED OPINION

At the conclusion of the hearing, the parties were informed that the oral rulings constituted the final order of the court, but that a written opinion would follow.

## BACKGROUND

### I.     The Alleged Backdating and Improper Repurchase of Stock

Ms. Sommers alleges that six stock option grants were manipulated to take advantage of the lowest (or close to the lowest) stock price for the month in which the grants were made. (Am. Compl. (#59) ¶ 70.)  This backdating caused FLIR to materially overstate its earnings from 1996 to 2006 to the SEC and the public.  (*Id.* ¶¶ 74-75, 77.)  Finally, Ms. Sommers contends that between 2003 and 2005, when the backdated options were vesting, the defendants directed FLIR to repurchase over $127 million of its own stock on the open market.  (*Id.* ¶¶ 80-81.)  She alleges that some of the defendants improperly sold their own stock in FLIR during this time, earning a benefit from the backdating and sale at the expense of FLIR and FLIR's shareholders.  (*Id.*)

### II.     The Demand, Investigation, and Derivative Suits

On August 29, 2006, shareholder Paul Zetlmaier sent a demand to FLIR's Board, alleging backdating of stock options from 1996 through 2001 and demanding that the Board take action to recover the alleged damages.  (Board's 1st Mem. in Supp. of Mot. to Dismiss (#22) 3; Board's Mem. in Supp. of Mot. to Dismiss (#65) 2-3.)  The Board responded to the demand by notifying Mr. Zetlmaier's counsel that it had appointed a special committee of two outside directors to investigate the allegations.  (Board's 1st Mem. in Supp. of Mot. to Dismiss (#22) 3.)

On November 8, 2006, FLIR publicly announced that it was conducting an internal investigation of its prior options granting practice and related accounting treatment and that the review had found that it was likely that the recorded grant dates for certain options were different

than the measurement dates for the same options. (Am. Compl. (#59) ¶ 82.) FLIR announced on March 1, 2007, that the Special Committee had completed its investigation and that FLIR had decided to restate financial statements from 1995 through 2005. (*Id.* ¶ 83.) Although the Special Committee had "strong circumstantial evidence of the improper selection of grant dates" (*id.*), the Board chose not to take legal action against any of the potentially guilty parties.

The first shareholder derivative action was filed in December 2006. (*See* CV 06-1829-MO, Compl. (#1).) Eventually four separate derivative actions against FLIR, including one by Mr. Zetlmaier, were consolidated (the "Consolidated Action"). Ms. Sommers' counsel represented three of the plaintiffs in the consolidated action and were named Co-Lead Counsel and Liaison Counsel for plaintiffs in the Consolidated Action. (*See* CV 06-1829-MO, Mot. to Consolidate (#8).) Ms. Sommers filed her suit slightly more than one month after FLIR's Board moved to dismiss the Consolidated Action for lack of standing. She sought to consolidate her case with the Consolidated Action but was unable to do so because the Consolidated Action was dismissed. (*See* CV 07-1142-MO Board's 1st Reply (#47) 4.) Ms. Sommers's complaint is substantially identical to the complaint filed in the Consolidated Action.

## STANDARD OF REVIEW

In reviewing a motion to dismiss, a court must "accept as true all well-pleaded facts in the complaint and construe them in the light most favorable to the nonmoving party." *Watson v. Weeks*, 436 F.3d 1152, 1157 (9th Cir. 2006) (citing *ASW v. Oregon*, 424 F.3d 970, 974 (9th Cir. 2005)). A claim should be dismissed for failure to state a claim upon which relief can be granted under Fed. R. Civ. P. 12(b)(6) "only if it appears beyond doubt that the plaintiff can establish no

set of facts under which relief could be granted." *Id.* (citing *Pacheco v. United States*, 220 F.3d

1126, 1129 (9th Cir. 2000)).

## DISCUSSION

### I.    The Current Board's Motion to Dismiss

Derivative actions must meet the requirements of Federal Rule of Civil Procedure

("FRCP" or "Rule") 23.1. *See Greenspun v. Del E. Webb Corp.*, 634 F.2d 1204, 1208-10 (9th

Cir. 1980) (affirming dismissal of a derivative action for failure to comply with FRCP 23.1).

Rule 23.1 requires that the complaint state "with particularity" any demand made on the Board or

the reasons why demand is futile. Fed. R. Civ. P. 23.1(b); *see also In re Silicon Graphics Inc.*

*Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999).

Rule 23.1 does not establish when a demand is futile. Demand futility is determined

under the law of the company's incorporating state—in this case, Oregon. *See In re Silicon*

*Graphics Inc. Sec. Litig.*, 183 F.3d at 989-90 (citing *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S.

90, 96 (1991)). Oregon law is undeveloped in this area, so the parties look to Delaware law. The

parties agree that the question of demand futility in this case is governed by *Rales v. Blasband*,

634 A.2d 927 (Del. 1993).

To determine whether demand is futile under *Rales*, "a court must determine whether or

not the particularized factual allegations of [the] derivative stockholder complaint create a

reasonable doubt that . . . the board of directors could have properly exercised its independent

and disinterested business judgment in responding to a demand." 634 A.2d at 934. A director is

interested if his or her potential personal liability is a "substantial likelihood." *Id.* at 936. If a

PAGE 5 - AMENDED OPINION

majority of the directors are interested, demand is excused as futile. *See Beam ex rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1046 (Del. 2004).

      A.    ***Ms. Sommers is precluded from arguing demand futility by Mr. Zetlmaier's demand on the Board***

      A plaintiff is precluded from alleging that demand is futile if the plaintiff has made a demand on the board. *Spiegel v. Buntrock*, 571 A.2d 767, 775 (Del. 1990) (stating that a shareholder who makes a demand cannot argue that demand is excused). The effect of the demand is to place control of the litigation in the hands of the board; "[b]y electing to make a demand, a shareholder plaintiff tacitly concedes the independence of the board to respond." *Id.* at 777. A demand by a co-plaintiff precludes other co-plaintiffs from alleging demand futility. *See, e.g.*, *Stotland v. GAF Corp.*, 469 A.2d 421, 422-23 (Del. 1983) (holding that a demand by one of two named plaintiffs precluded the other plaintiff from alleging demand futility); *Boeing Co. v. Shrontz*, Civ. A. No. 11273, 1992 WL 81228 at *5 (Del. Ch. Apr. 20, 1992) (unpublished) (same). Some courts have gone so far as to say that a shareholder demand forecloses the demand futility argument for all potential shareholder plaintiffs. *See, e.g.*, *Pace v. Jordan*, 999 S.W.2d 615, 621-22 (Tex. App. 1999) ("We discern no logical reason why a board's decision should not bind similarly situated shareholders making identical claims.").

      But there is contradictory case law regarding whether a plaintiff may be bound by a demand made by another shareholder who is not a co-plaintiff. The Second Circuit's interpretation of Delaware law favors the position that once a single demand is made all shareholders lose the ability to argue demand futility. *See RCM Sec. Fund, Inc. v. Stanton*, 928 F.2d 1318, 1329 (2d Cir. 1991). "Under Delaware law, the effect of a shareholder demand upon

PAGE 6 - AMENDED OPINION

a board of directors is to deprive derivative plaintiffs of the right to argue futility and to 'place

control of the derivative litigation in the hands of the board.'"  *Id.* at 1328 (quoting *Spiegel v.

Buntrock*, 571 A.2d 767, 775 (Del. 1990)).  The Second Circuit noted that "*Zapata* [*Corp. v.

Maldonado*, 430 A.2d 779 (Del. 1981)], indicated that once a board has addressed the desirability

of particular litigation—whether upon a shareholder demand or its own initiative—courts must

accord some deference to the board's decision."  *RCM*, 928 F.2d at 1329 (citing *Zapata*, 430 A.2d

at 784-86).  Thus, "[t]he true rationale of *Spiegel* . . . seems to be that a demand by any

shareholder necessarily involves the board in decisions concerning the derivative action, and that

the *Zapata* rule concerning director control of that action is triggered by the first demand."  *Id.*

    However, a few months before *RCM* was published, the Delaware Court of Chancery

issued an unpublished opinion in *Avacus Partners, L.P. v. Brian*, 1990 WL 161909 (Del. Ch.

Oct. 24, 1990) (unpublished) holding that a plaintiff may argue demand futility even if an

unrelated shareholder has made a demand on the board during the pendency of the action.  In

*Avacus*, the defendants argued that its response to the demand of another shareholder

demonstrated that demand by the plaintiff would not have been futile.  *Id.* at *9.  The court

indicated that the essential question was whether the plaintiff had made the proper allegations

under *Aronson v. Lewis*, 473 A.2d 805 (Del. 1984).  *Avacus*, 1990 WL 161909, at *9.[1]  Once the

plaintiff makes the required showing under *Aronson*, the corporation must meet the test set forth

in *Zapata* to prevail on a motion to dismiss.  *Id.*  Because the plaintiff had made the required

---

[1] In this case, Ms. Sommers has to meet the requirements of *Rales*, rather than *Aronson*.
The reasoning from *Avacus* remains the same.

showing the board's response to another shareholder's demand was "not sufficient to compel dismissal of [plaintiff's] claim at this point." *Id.* at *10.

No Delaware court has spoken to the issue since 1990. However, courts following the reasoning of *Avacus* recognize that an exception should be made when a shareholder is attempting to "cover all the bases" by both issuing a demand and alleging demand futility. *See In re ITT Corp. Derivative Litig.*, 588 F. Supp. 2d 502, 509 (S.D.N.Y. 2008) (following *Avacus* because there was no suggestion that the two plaintiffs in the consolidated action, "who brought separate actions and were represented by different counsel, acted in concert to 'cover all the bases'" (quoting *Boeing Co.*, 1992 WL 81228 at *5)).

FLIR contends that Mr. Zetlmaier's demand binds Ms. Sommers because they would have been co-plaintiffs if the Consolidated Action had not been dismissed, Ms. Sommers's counsel were counsel in the Consolidated Action, and Ms. Sommers's complaint is virtually identical to that filed in the Consolidated Action. (Board's 1st Reply (#47) 3.) Ms. Sommers responds that *Avacus* precludes this court from finding that Mr. Zetlmaier's demand is binding upon her because she never actually became his co-plaintiff. She also contends that consolidation does not cause actions to lose their separate identities.[2] (Resp. to Board's Mot. to Dismiss (#82) 20-21.)

---

[2] The question of whether consolidated cases retain their separate identities has not been fully resolved in this circuit, but appears to depend on the purpose for which the merger is required. *See Schnabel v. Lui*, 302 F.3d 1023, 1035-36 (9th Cir. 2002) (citations omitted) (noting that consolidation does not make parties in one suit parties in another for purposes of diversity jurisdiction and consolidation for purposes of discovery does not merge suits into a single cause of action, but that an entry of judgment disposing of one of two consolidated cases was not an appealable final judgment). Because my decision rests on considerations other than whether Ms. Sommers actually was a co-plaintiff of Mr. Zetlmaier, I do not decide the question of whether or not the cases in the Consolidated Action were merged for the purposes of demand futility.

I hold that Ms. Sommers is bound by Mr. Zetlmaier's demand on FLIR's Board and therefore may not argue demand futility.  Even if governing law is assumed to require that the binding demand be made by a co-plaintiff, under the rather unusual facts presented by this case, Ms. Sommers is the functional equivalent of a co-plaintiff of Mr. Zetlmaier.  Ms. Sommers is represented by the lead and liaison counsel for the Consolidated Action, her complaint is virtually identical to that filed in the Consolidated Action, and Ms. Sommers herself attempted to join the Consolidated Action before it was dismissed.  If Ms. Sommers may argue demand futility then any lawyer could encourage one shareholder to make a demand and when the board does not respond in the way the shareholders want, could find another shareholder to sue arguing demand futility.  This is exactly the situation the Delaware Court of Chancery wished to avoid in *Boeing Co.* where two plaintiffs attempted to "cover all the bases" by both making a demand and arguing demand futility.  *See* 1992 WL 81228 at *5.  Because she is, in everything but name, the co-plaintiff of Mr. Zetlmaier, his demand precludes her from arguing demand futility.[3]

## B.      *Demand would be futile because a majority of the FLIR Board members are interested*

I proceed to take up the alternative question: If demand futility is a path open to Ms. Sommers, has she alleged facts sufficient to show such futility?  As I explained to the parties my ruling on demand futility moots these remaining issues.  I analyze them only in the alternative.

FLIR's Board is comprised of seven directors, Earl R. Lewis, John C. Hart, Angus L. Macdonald, Steven E. Wynne, Michael T. Smith, John D. Carter, and William W. Crouch.

---

[3] Of course, if the governing law is that a demand by any shareholder forecloses the demand futility argument for all potential shareholder plaintiffs on the same matter, then Mr. Zetlmaier's demand is binding on plaintiff.

There is a reasonable doubt that four of the directors, Mr. Lewis, Mr. Hart, Mr. Macdonald, and Mr. Wynne, are independent and disinterested, therefore, demand would be futile.

### 1.    There is a reasonable doubt that Earl R. Lewis is independent and disinterested

Ms. Sommers argues Mr. Lewis is interested because he allegedly received backdated stock options. For example, "[Mr.] Lewis received at least 296,000 options that were dated at or very close to the lowest stock price for the month during which the options were granted." (Am. Compl. (#59) ¶ 15.) Assuming the allegations are true, Mr. Lewis faces a substantial likelihood of liability; he would lose stock options or have to return money to FLIR. Furthermore, if he knowingly received backdated options, as the Amended Complaint alleges, he faces a substantial likelihood of liability for violating his duties of care and loyalty. Thus, there is a reasonable doubt that Mr. Lewis is independent and disinterested.

### 2.    There is a reasonable doubt that John C. Hart is independent and disinterested

Ms. Sommers argues Mr. Hart is interested because he was a member of the compensation committee and approved the allegedly backdated stock options. Mr. Hart was "a member of the Compensation Committee from 1996 to 2002," and the Compensation Committee "administers the Company's stock option plans." (Am. Compl. (#59) ¶¶ 21, 53.) According to FLIR's internal investigation, "'[t]he grant dates used for certain stock option awards . . . were likely selected based upon stock price considerations, with certain dates from 1995 through 1999 likely selected in hindsight.'" (*Id.* ¶ 83 (emphasis omitted).) As a member of the Compensation Committee, Mr. Hart would have known the options were backdated because he approved them. (*See id.* ¶¶ 21, 56.) Assuming the allegations are true, Mr. Hart faces a substantial likelihood of

liability for violating his fiduciary duties of care and loyalty by approving backdated stocks.

Thus, there is a reasonable doubt that Mr. Hart is independent and disinterested.

      **3.**     **There is a reasonable doubt that Angus L. Macdonald is independent and disinterested**

Mr. Macdonald became a member of the Compensation Committee in 2001, and options granted on September 10 and December 27, 2001, were allegedly backdated. (*Id.* ¶¶ 7, 8, 23, 58.) For the reasons discussed above, there is a reasonable doubt that Mr. Macdonald is independent and disinterested.

      **4.**     **There is a reasonable doubt that Steven E. Wynne is independent and disinterested**

The allegations in the original complaint were insufficient to demonstrate that Mr. Wynne was interested. In the Amended Complaint, Ms. Sommers made the following additional arguments regarding Mr. Wynne's dependence: (1) that Mr. Wynne's relationship with the law firm of Ater Wynne, which gave advice to FLIR regarding SEC filings during the time of the backdating, causes Mr. Wynne to have a substantial likelihood of liability (as a founder and partner during two of the backdating periods), (*id.* ¶ 101), and (2) that the conduct of the entire Board regarding the investigation of the backdating is not protected by the business judgment rule because the Board failed to adequately disclose the results of the investigation or to take remedial action (*id.* ¶¶ 91, 107).

              **a.**     Mr. Wynne's relationship with Ater Wynne is sufficient to create a reasonable doubt that he is independent and disinterested

Ms. Sommers states that "Ater Wynne has served as FLIR's outside legal counsel since at least October 1997. During that period of time, Ater Wynne has received copies of FLIR's

registration statements filed with the SEC (e.g., Forms S-1, S-3 and S-8) and has provided opinions in those statements." (Am. Compl. (#59) ¶ 101.) Thus, she argues, Ater Wynne "faces a sufficiently substantial likelihood of liability in connection with its representation of FLIR at times during which the Company was intentionally backdating stock options and filing false and misleading financial statements." (*Id.*) As a partner at Ater Wynne from 1990 to 1995, August 2001 to March 2002, and April 2003 to February 2004, a period covering two of the backdated grants (September 10, 2001 and December 27, 2001), Mr. Wynne would be liable if the firm was liable. (*Id.*) Further, Ms. Sommers suggests that Mr. Wynne "presumably continues to receive substantial remuneration from the firm and has an interest in continuing to bring business to Ater Wynne and receive monetary compensation from the firm." (*Id.*)

At oral argument, Ms. Sommers expanded on the potential avenues to Mr. Wynne's dependence due to his relationship with Ater Wynne. In particular, Ms. Sommers argued that when considering a demand alleging wrongdoing on the part of members of FLIR's board of directors, Mr. Wynne would have a conflict of interest between his professional duty to protect former clients (the individual members of FLIR's board) and his current duty to protect FLIR itself. (*See* Mot. to Dismiss Tr. (#102) 16:9-17.)

Defendant's point out that Ms. Sommers "provides no facts even suggesting that any Ater Wynne attorney, including Wynne, knew of the alleged backdated options or committed legal malpractice or any unlawful act . . . ." (Board's Mem. in Supp. of Mot. to Dismiss (#65) 10.) Nor are there allegations that Wynne performed work for FLIR during the relevant periods. (*Id.*) Finally, the Board argues that Ms. Sommers merely presumes that Mr. Wynne still receives compensation from the firm. (*Id.* at 11.)

PAGE 12 - AMENDED OPINION

Both the Third and Sixth Circuits have declined to find an automatic inference of bias or control on the part of a director who has personally given legal assistance to a company as outside counsel. *See Kanter v. Barella*, 489 F.3d 170, 179 (3d Cir. 2007); *In re Gen. Tire & Rubber Co. Sec. Litig.*, 726 F.2d 1075, 1084 (6th Cir. 1984). The Delaware Court of Chancery has noted that receipt of "substantial" fees by the law firm of a director could create a reasonable doubt as to that director's independence, but that the inference is not automatic. *In re Ply Gem Indus., Inc., S'holders Litig.*, 2001 WL 755133, *8-9 (Del. Ch. June 26, 2001). In such a case, the plaintiff must allege the amount of fees received or show that the director's compensation from the firm was tied to work he helped bring in from the company. *Guttman v. Huang*, 823 A.2d 492, 503 (Del. Ch. 2003).

Ms. Sommers cites *In re INFOUSA, Inc. S'holders Litig.*, 953 A.2d 963, 991-92 (Del. Ch. 2007) to support her argument that a "threat of withdrawal of substantial business is 'enough, in the case of a legal professional, to raise a reasonable doubt as to a director's independence.'" (Pl.'s Mem. in Opp. to Board (#82) 12.) In *In re INFOUSA*, the corporation's annual payments to the firm exceeded the annual yearly income of the partners at the firm. 953 A.2d at 991. The court further noted that a partner could lose their equity in the firm if they failed to bring in sufficient billing. *Id.*

Although courts have declined to find an automatic bias on the part of attorneys serving on boards, they have indicated that such a relationship has the potential to create bias. *See, e.g.*, *In re Gen. Tire & Rubber*, 726 F.2d at 1084 (stating that receipt of fees by a law firm could create a reasonable doubt as to an attorney director's independence). I am concerned about the potential financial ties between Mr. Wynne, Ater Wynne, and FLIR, although such ties are only marginally

PAGE 13 - AMENDED OPINION

depicted in the Amended Complaint or even at oral argument.  I am even more concerned about

Mr. Wynne's potential conflict of interest; as an attorney, Mr. Wynne has a professional duty to

protect both current and former clients, a duty that could interfere with his duty to FLIR.  At the

motion to dismiss stage, Ms. Sommers's allegations regarding Mr. Wynne's relationship with

Ater Wynne and the timing of his representation of FLIR's board are sufficient to create a

reasonable doubt that Mr. Wynne is independent and disinterested.

> b.    The results of the internal investigation do not create a reasonable
>       doubt that Mr. Wynne is independent and disinterested

Ms. Sommers also alleges that the Board's disclosures regarding the Special Committee's

investigation into the backdating were insufficient because they failed to disclose: "(i) what

specific grants suffered from dating issues; (ii) the identities of those involved who played a role

in selecting the dates with hindsight; (iii) what specific corporate governance failures occurred

and how they contributed to the backdating; and (iv) what specific steps, if any, they took to

remedy these issues."  (Am. Compl. (#59) ¶ 91.)  She argues that the Board members are not

protected by the business judgment rule because of this failure to adequately disclose the results

of the investigation and the failure to take remunerative action.  (*Id.* ¶ 107.)

"[A]n attack on a board's internal investigation is improper in the context of a demand

futility argument, because such an argument depends on the premise that the plaintiff has

necessarily abandoned the board as a vehicle for righting the wrongs complained of."  *In re

Autodesk, Inc.*, 2008 WL 5234264, *8 (N.D. Cal. Dec. 15, 2008) (citing *Desimone v. Barrows*,

924 A.2d 908, 950 (Del. Ch. 2007)).  In fact, the Delaware Court of Chancery has rejected the

very argument made by Ms. Sommers, stating, "A derivative plaintiff cannot fail to make a

PAGE 14 - AMENDED OPINION

demand on the basis that demand is excused, fail to meet his burden to plead demand excusal, and then try to preserve his right to proceed by arguing in essence that the board wrongfully refused a demand that he never made." *Desimone*, 924 A.2d at 950.

As in *Desimone*, Ms. Sommers has failed to plead particular facts about how the Special Committee investigated the allegations of backdating and why they came to the conclusions they did. *See id.* Ms. Sommers does not allege who was on the Special Committee or whether the Board members had undue influence over the Committee members. *See In re Autodesk, Inc.*, 2008 WL 5234264 at *8 (finding complaints of inadequate investigation and biased reporting of results of investigation insufficient to prove demand futility because the director defendants conducting the investigation did not receive or grant the challenged options). The Board's appointment of a Special Committee and the Committee's report of its investigation does not create a reasonable doubt that Mr. Wynne is independent and disinterested.

### 5.     There is not a reasonable doubt that John D. Carter is independent and disinterested

Ms. Sommers alleges a new argument regarding why Mr. Carter is not independent and disinterested in her Amended Complaint. She argues that "[t]here is also a reason to doubt the independence of defendant Carter because of his long-standing and significant personal professional ties with defendant Wynne, an interested director, rendering demand upon defendant Carter futile." (Am. Compl. (#59) ¶ 102.) In particular, Ms. Sommers argues that Mr. Carter has numerous business dealings with Ater Wynne (Ater Wynne represents/ed several companies for which Mr. Carter has worked or has been on the Board) and that both Mr. Wynne and Mr. Carter are involved socially and through business with Neil Goldschmidt. (*Id.*)

PAGE 15 - AMENDED OPINION

> To create a reasonable doubt about an outside director's independence, a plaintiff must plead facts that would support the inference that because of the nature of a relationship or additional circumstances other than the interested director's stock ownership or voting power, the non-interested director would be more willing to risk his or her reputation than risk the relationship with the interested director.

*Beam*, 845 A.2d at 1052.  Only professional or personal friendships that "border on or even exceed familial loyalty and closeness, may raise a reasonable doubt whether a director can appropriately consider demand."  *Id.* at 1050.  Ms. Sommers does not allege anything approaching this type of close/familial relationship between Mr. Wynne and Mr. Carter.

Ms. Sommers also attacks Mr. Carter's independence and disinterestedness, along with that of the whole Board, because of the insufficient disclosures of the internal investigation. (Am. Compl. (#59) ¶ 107.)  The insufficiency of this argument is discussed above as to Mr. Wynne.

### 6. There is not a reasonable doubt that Michael T. Smith and William W. Crouch are independent and disinterested

Ms. Sommers attacks the independence and disinterestedness or Mr. Smith and Mr. Crouch, along with that of the whole Board, because of the insufficient disclosures of the internal investigation.  (*Id.*)  The insufficiency of this argument is discussed above as to Mr. Wynne.

## II.    The Remaining Motions to Dismiss

The remaining motions to dismiss in this case challenge Ms. Sommers's case on the merits.  I will examine each of the fourteen claims in the Amended Complaint rather than taking the motions to dismiss one at a time, so as to avoid repetition of arguments made by several defendants.  At the end, I have included a chart which identifies which claims were made against which individuals and records the rulings made on each claim for each defendant.

PAGE 16 - AMENDED OPINION

**A.    *Count I: Disgorgement under the Sarbanes-Oxley Act***

Ms. Sommers brings a claim for disgorgement under section 304 of the Sarbanes-Oxley

Act against Mr. Lewis and Mr. Bailey.  (Am. Compl. (#59) ¶¶ 112-16.)  This claim is dismissed

with prejudice as to all defendants because "section 304 does not create a private right of action."

*In re Digimarc Corp. Derivative Litig.*, 549 F.3d 1223, 1233 (9th Cir. 2008).

**B.    *Count II: Violations of section 10(b) of the Securities Exchange Act***

Ms. Sommers brings a claim for violation of section 10(b) of the Securities Exchange Act

and SEC Rule 10b-5 against all the individual defendants related to FLIR's repurchase of its own

stock between 2003 and 2005.  (Am. Compl. (#59) ¶¶ 117-23.)  A repurchase of stock by the

company is required to maintain a claim under section 10(b).  *See* 15 U.S.C. § 78j(b); *see also*

*Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 738 (1975).

By Ms. Sommers own pleadings, Mr. Stringer, Mr. Porter, Mr. Samper, Mr. Palmquist,

Mr. Daltry, and Mr. Martin were not affiliated with FLIR between 2003 and 2005.  (*See* Am.

Compl. (#59) ¶¶ 36, 37, 32, 33, 27, 30.)  There is no allegation that any of them sold FLIR stock

between 2003 and 2005.  None of them could have caused FLIR to repurchase its own stock

because they no longer worked at FLIR.

In addition, the claim is time barred as to Mr. Stringer, Mr. Porter, Mr. Samper, Mr.

Palmquist, Mr. Daltry, and Mr. Martin because section 10(b) claims must be brought within two

years of discovery or five years of the violation, whichever is earlier.  28 U.S.C. § 1658(b).  Ms.

Sommers filed her original complaint on August 3, 2007, therefore she may only assert a section

10(b) claim based on alleged violations that occurred between August 2002 and August 2007.

These defendants were no longer affiliated with FLIR in August 2002 therefore any claim Ms.

Sommers can make is necessarily untimely. I therefore dismiss Count II with prejudice as to Mr. Stringer, Mr. Porter, Mr. Samper, Mr. Palmquist, Mr. Daltry, and Mr. Martin; Count II is not dismissed as to the remaining defendants.

### C.    *Count III: Violations of section 20(a) of the Securities Exchange Act*

Ms. Sommers brings a claim for violation of section 20(a) of the Securities Exchange Act against Mr. Bailey and the director defendants. (Am. Compl. (#59) ¶¶ 124-25.) To state a claim under section 20(a) of the Securities Exchange Act a plaintiff must allege: "(1) a primary violation of federal securities laws . . . ; and (2) that the defendant exercised actual power or control over the primary violator." *Howard v. Everex Sys., Inc.*, 228 F.3d 1057, 1065 (9th Cir. 2000) (citing *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1575 (9th Cir. 1990)). "[E]stablishing the liability of the controlled person or entity is plainly an element of a claim for relief under . . . Section 20(a)." *In re Suprema Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 285 (3d Cir. 2006). However, the primary violator need not be named as a defendant.[4] *Id.*

Ms. Sommers has alleged a primary violation of section 10(b) by all the individual defendants. She argues that the director defendants exercised control over FLIR, causing it to engage in illegal conduct. (Am. Compl. (#59) ¶ 125.) She has not alleged that FLIR was a primary violator.

> Plaintiff[] do[es] not allege claims against [the corporation] as a primary violator, and indeed, it is logically impossible for a corporation on whose behalf a derivative action is brought to also be a primary violator. Yet, in the § 20(a) claim, plaintiff[] assert[s] that the alleged controlling persons exercised their power and influence over [the corporation]. Thus, the § 20(a) cause of action fails to state a claim.

---

[4] Here, FLIR is named as a nominal defendant.

PAGE 18 - AMENDED OPINION

*In re Verisign, Inc., Derivative Litig.*, 531 F. Supp. 2d 1173, 1213 (N.D. Cal. 2007) (internal citations omitted); *see also In re Maxim Integrated Prods, Inc. Derivative Litig.*, 574 F. Supp. 2d 1046, 1067 (N.D. Cal. 2008) (explaining that in a direct action a corporation may be a primary violator, as in *Howard*, 228 F.3d 1057, but that because a derivative action is brought on behalf of the corporation, the corporation cannot be a primary violator for control person purposes); *In re Suprema*, 438 F.3d at 285 (allowing section 20(a) claim to go forward in a direct class action with the corporation as the primary violator when the plaintiff expressly named the corporation as such). Thus, Count III is dismissed with prejudice as to all defendants.

### D.   *Count IV: Violations of Oregon Securities Law*

Ms. Sommers brings a claim for violation of Oregon Revised Statutes ("ORS") §§ 59.135 and 59.137 against all the individual defendants. (Am. Compl. (#59) ¶¶ 126-31.) As with Count II, Count IV requires the repurchase of stock by the company, which occurred only from 2003 to 2005.

By Ms. Sommers's own pleadings, Mr. Stringer, Mr. Porter, Mr. Samper, Mr. Palmquist, Mr. Daltry, and Mr. Martin were not affiliated with FLIR between 2003 and 2005. (*See* Am. Compl. (#59) ¶¶ 36, 37, 32, 33, 27, 30.) Therefore, Count IV is dismissed with prejudice as to Mr. Stringer, Mr. Porter, Mr. Samper, Mr. Palmquist, Mr. Daltry, and Mr. Martin; Count IV is not dismissed as to the remaining defendants.

### E.   *Counts V, XI, XII, and XIII: Unjust Enrichment, Accounting, Rescission, and Constructive Trust*

Ms. Sommers brings Count V for unjust enrichment and Count XII for rescission against the option recipient defendants and Count XI for an accounting and Count XIII for constructive

trust against the options recipients, directors, and Mr. Lewis, Mr. Bailey, Mr. Fitzhenry, and Mr. Samper.  I am analyzing these claims together because they all relate to the alleged improper profits obtained by the defendants who received the allegedly backdated options.

Count XI and Count XIII are dismissed with prejudice as to Mr. Porter because Ms. Sommers has not alleged that he ever received any options, therefore he has no duty to provide an accounting or to place any improper profits in constructive trust for FLIR.

Counts V, XII, and XIII are dismissed with prejudice and Count XI is dismissed without prejudice as to Mr. Stringer.  Ms. Sommers does not allege that Mr. Stringer ever exercised the options he received.  In fact, Mr. Stringer's publicly filed Forms 3, 4, and 5, demonstrate that he never exercised the options and that the options expired three months after his employment with FLIR terminated.  (Schoen Decl. (#32) ¶¶ 7-9, Ex. 1 at 10.)  I may consider these documents without converting the motion to dismiss into a motion for summary judgment because the forms are public records and are referenced and incorporated into the Amended Complaint ¶ 108.  *See United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) (stating that a court may consider "documents attached to the complaint, documents incorporated by reference in the complaint, or matters of judicial notice" in deciding a motion to dismiss); *see also In re Silicon Graphics Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (holding that a district court may consider SEC filings when the plaintiff gleaned facts from the filings and alleged the contents of the filings in her complaint).  Mr. Stringer was not unjustly enriched and has no money to return to FLIR. Additionally, Mr. Stringer argues that he cannot provide an accounting (Count XI) because he has had no access to FLIR's books and records since 2001.  (Stringer's Mem. in Supp. of Mot. to Dismiss (#63) 13.)  Count XI for an accounting is dismissed without prejudice so that Ms.

PAGE 20 - AMENDED OPINION

Sommers can make a more specific claim for an accounting regarding information within Mr. Stringer's possession.

Counts V, XI, XII, and XIII are not dismissed as to any other defendants.

### F.    *Count VI: Breach of fiduciary duty*

Ms. Sommers brings a claim for breach of fiduciary duty for approving improperly dated stock option grants to FLIR executive officers against the director defendants and Mr. Lewis, Mr. Bailey, Mr. Fitzhenry, and Mr. Samper.  (Am. Compl. (#59) ¶¶ 135-39.)  Ms. Sommers has alleged sufficient facts to defeat a motion to dismiss, therefore all the motions to dismiss are denied as to Count VI.

### G.    *Count VII: Insider selling*

Ms. Sommers brings a claim for breach of fiduciary duty for insider selling and misappropriation of information against the insider selling defendants.  (*Id.* ¶¶ 140-44.)  In Oregon a plaintiff must demonstrate that the breach of fiduciary duty "caused an identifiable loss or resulted in injury to the party."  *Lindland v. United Bus. Invs., Inc.*, 693 P.2d 20, 25 (Or. 1984).  FLIR could only have been injured by insider selling when it was repurchasing its own stock between 2003 and 2005.  Therefore, Count VII is dismissed with prejudice as to any defendant who did not sell stock between 2003 and 2005.

### H.    *Counts VIII and IX: Abuse of control and gross mismanagement*

Ms. Sommers brings claims for abuse of control and gross mismanagement against all the individual defendants.  (Am. Compl. (#59) ¶¶ 145-52.)  However, Oregon courts do not recognize either of these claims.

PAGE 21 - AMENDED OPINION

Ms. Sommers argues that when Oregon law is silent we should look to the law of other states and that Delaware recognizes both of these claims, therefore we should allow the claims to go forward. (Pl.'s Resp. to Individual Defs. (#84) 24-25.) She cites two cases for support for an abuse of control claim: *Bodell v. Gen. Gas & Elec. Corp.*, 140 A. 264, 267 (Del. Ch. 1927) and *Cincinnati Bell Cellular Sys. Co. v. Ameritech Mobile Phone Serv. of Cincinnati, Inc.*, 1996 WL 506906, *42-43 (Del. Ch. Sept. 3, 1996). (Pl.'s Resp. to Individual Defs. (#84) 25.) The phrase "abuse of control" does not appear in either case and nothing on the cited pages discuss a similar claim. In fact, *Cincinnati Bell* does not have forty-three pages.

Ms. Sommers also contends that gross mismanagement "is a well-established ground for bringing suit against corporate directors" in Oregon. (Pl.'s Resp. to Individual Defs. (#84) 24-25.) She cites *Hedges v. Paquett*, 3 Or. 77, 80 (1869), to support this proposition. In *Hedges*, the shareholders sued the directors of a corporation charging fraud and mismanagement to determine whether the directors should be removed or the affairs of the corporation wound up. *Hedges*, 3 Or. at 77; *see also* 124 A.L.R. 364 (1940) (citing *Hedges* as an Oregon case on the authority of a court of equity to remove directors or officers of a private corporation). This is consistent with the only other Oregon court decision that mentions "gross mismanagement," *Henderson v. Tillamook Hotel Co.*, 148 P. 57, 58 (Or. 1915), in which the plaintiff's asserted "incompetence" and "gross mismanagement" as bases for ousting the current directors and officers of a corporation. Ms. Sommers is not seeking to have directors removed.

Ms. Sommers also finds support for a gross mismanagement claim in Delaware law, citing *Cincinnati Bell* and *Rabkin v. Philip A. Hunt Chem. Corp.*, 547 A.2d 963, 1169 (Del. Ch. 1986) as defining the pleading requirements for a claim for gross mismanagement. (Pl.'s Resp. to

PAGE 22 - AMENDED OPINION

Individual Defs. (#84) 25.)  Both these cases were describing a standard for "gross negligence," not for gross mismanagement.  *Cincinnati Bell* used the phrase "gross mismanagement" as the basis for a gross negligence claim.  *See* 1996 WL 506906 at *13-14.  *Rabkin* never even mentions gross mismanagement, rather it is using a gross negligence standard for a breach of fiduciary duty claim.  *See* 547 A.2d at 970.  Thus, Counts VIII and IX are dismissed with prejudice as to all defendants.

**I.**      ***Count X: Waste***

Ms. Sommers brings a claim for waste of corporate assets against all the individual defendants.  (Am. Compl. (#59) ¶¶ 153-55.)  She has alleged sufficient facts to defeat a motion to dismiss, therefore all the motions to dismiss are denied as to Count X.

**J.**      ***Count XIV: Breach of duty of loyalty***

Ms. Sommers brings a claim for breach of the duty of loyalty against the director defendants for disseminating false and misleading information to the shareholders.  (*Id.* ¶¶ 170-73.)  She has alleged sufficient facts to defeat a motion to dismiss, therefore all the motions to dismiss are denied as to Count XIV.

**K.**      ***Chart summary of claims and rulings***

Due to space constrictions, abbreviations are used in the chart.  "G" indicates that the motion to dismiss was granted and "D" indicates that it was denied.  A blacked out square indicates that a claim was not brought against that defendant or group of defendants.

//

//

//

PAGE 23 - AMENDED OPINION

## CONCLUSION

As stated that the hearing, the Motion to Dismiss Amended Complaint by FLIR Systems, Inc.'s Current Board of Directors (#64) with prejudice was granted.  All other motions to dismiss were dismissed as moot.

IT IS SO ORDERED.

Dated this  8th  day of April, 2009.

/s/ Michael W. Mosman
MICHAEL W. MOSMAN
United States District Judge

PAGE 24 - AMENDED OPINION

|  | Against | Lewis Ds | Stringer | Porter | Samper | Palmquist | Daltry | Martin |
|---|---|---|---|---|---|---|---|---|
| Count I: SOX 304 | Lewis & Bailey | G | ■ | ■ | ■ | ■ | ■ | ■ |
| Count II: Sec. 10(b) | All | D | G | G | G | G | G | G |
| Count III: Sec. 20(a) | Bailey & Directors | G | G | G | ■ | ■ | G | ■ |
| Count IV: Or. sec. | All | D | G | G | G | G | G | G |
| Count V: unjust enrichment | Options Recipients | D | G | ■ | D | D | D | D |
| Count VI: breach of fiduciary duty | Lewis, Bailey, Fitzhenry, Samper & Directors | D | D | D | D | ■ | D | ■ |
| Count VII: Selling breach of fiduciary duty | Insider Selling | G if no sale in 03-05 | G 2000 | ■ | G 1997-99 | G 1999 | G 1998 | G 1996-99 |
| Count VIII: abuse of control | All | G | G | G | G | G | G | G |
| Count IX: gross mismanagement | All | G | G | G | G | G | G | G |
| Count X: waste | All | D | D | D | D | D | D | D |

PAGE 25 - AMENDED OPINION

| Count XI: accounting | Lewis, Bailey, Fitzhenry, Samper, Options Recip. & Directors | D | G w/out prejud. | G | D | D | D | D |
|---|---|---|---|---|---|---|---|---|
| Count XII: rescission | Options Recipients | D | G | ■ | D | D | D | D |
| Count XIII: constructive trust | Lewis, Bailey, Fitzhenry, Samper, Options Recip. & Directors | D | G | G | D | D | D | D |
| Count XIV: breach of loyalty | Directors | D | D | D | ■ | ■ | D | ■ |

PAGE 26 - AMENDED OPINION